C. E. PUTNAM v. W. C. HUTCHISON, *as Receiver of the Bank of Richmond.*

No. 204.

1. STATE BANKS—*Application of Statute.* Nothing contained in the banking law of 1891 prohibits a banking corporation then in existence from continuing in business with only 20 per cent. of its capital stock paid in, provided it is solvent and complies with the legal requirements of the bank commissioner.

2. —————— *Capital Stock—Void Agreement between Stockholders.* The stockholders of a banking corporation whose charter, verified certificate and advertisements proclaim its capital stock to be $50,000, and whose verified statements recite that only $10,-000 has been paid in upon such stock, cannot, without changing its charter, verified certificates, advertisements, or verified statements, relieve themselves of their liability to the creditors of such corporation by any agreement among themselves, whether the creditors were such before or after such agreement.

3. —————— *Transfer of Stock—Liability of Stockholders.* A person who subscribes $1,000 to the capital stock of a corporation, and who has paid but $200 on such stock, cannot relieve himself of his liability to the creditors of said corporation for the remaining $800 due upon such subscription by transferring $200 of paid-up stock to another person.

MEMORANDUM.—Error from Franklin district court; A. W. BENSON, judge. Action by W. C. Hutchison, as receiver of The Bank of Richmond, against C. E. Putnam on a contract of subscription. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein was filed July 13, 1896

18—4 KAN. APP.

The statement of the case, as made by DENNISON, J., is as follows :

This is an action brought in the district court of Franklin county, Kansas, by W. C. Hutchison, as receiver of the Bank of Richmond, to recover from C. E. Putnam the amount claimed to be due from said Putnam as the unpaid portion of his subscription to the capital stock of said bank. The case was tried by the court without a jury, and the following findings of fact and conclusions of law were made :

" FINDINGS OF FACT.

"1. On July 11, 1890, C. E. Putnam, W. D. Mc-Farlane, E. W. Spear, J. A. Hutchison, M. L. Waldo, W. E. Gault, H. H. Staley, Peter Hastert and N. M. Spaulding organized themselves into a savings association, as provided by article 16, chapter 23, General Statutes of 1889. A charter was accordingly prepared, subscribed by the incorporators above named, duly acknowledged, and filed in the office of the secretary of state, as prescribed by article 1 of said chapter, wherein the name of the corporation is stated as The Bank of Richmond, its place of business, Richmond, Franklin county, Kansas, and its capital stock, $50,000, divided into 500 shares of $100 each.

"2. At the time of such organization, the defendant, C. E. Putnam, in writing, as set out in the petition, subscribed and agreed to take and pay for 10 shares of said capital stock, amounting to $1,000, and certificate No. 1 was duly issued to him therefor, a copy of which is attached to the petition, upon which he paid in cash 20 per cent. of their par value, to wit, $200, and has paid no more thereon. The other 490 shares were duly subscribed for, 20 per cent. paid thereon, and no more, and certificates duly issued to the several subscribers in the same form.

"3. On July 11, 1890, the stockholders, including all the subscribers to said charter, duly met and elected a board of directors, among others this de-

fendant, and thereupon said board on the same day elected the defendant president, and also elected a vice-president, and cashier, and secretary; and thereafter, on August 19, 1890, the president and secretary made, acknowledged and filed in the office of the register of deeds of this county the certificate required by section 264 of said chapter 23, General Statutes of 1889, in which the capital stock was stated to be $50,-000; and the bank at once entered upon the business of banking, and continued such business at Richmond until on or about July 18, 1893.

"4. About September 15, 1891, but covering some time before and after said date, upon request of the cashier, who was actively managing said bank, and who owned a majority of the stock, the various stockholders returned their certificates of stock upon which 20 per cent. had been paid as before stated, and received new certificates therefor in the same form, for the number of shares such 20 per cent. already paid in would fully pay for, except the holder of one certificate of 10 shares, which was not surrendered, and is still outstanding, although the holder consented to the arrangement. The defendant accordingly surrendered his certificate No. 1, for 10 shares, and in lieu of it received a new certificate, No. 55, for two shares, also signed by himself as president, and by the cashier, upon the back of which was written, 'fully paid up,' and signed 'A. D. Sowerby, cashier.' All the old certificates thus returned were reattached to the stubs from which they had been separated when issued, and above the face of each was written in the margin: 'Certificate No. — issued in place of this, September 15, 1891,' the blank being filled in each case with the number of the new certificate issued in its place. In this manner all the old certificates upon which 20 per cent. had been paid were returned and reattached to the stubs in the book of blank certificates, each indorsed 'fully paid up,' issued for one-fifth the original number of shares, in their place.

"5. The surrender and reissue was done because of the enactment of the banking law of 1891, being

chapter 43, Session Laws of 1891, and to make it appear that the capital stock of the bank was fully paid in, and it was so done upon the advice and request of the cashier and upon informal and casual conversations between various stockholders and officers as they chanced to meet. No meeting of stockholders or directors was ever called or held to consider the matter, and no action whatever taken· by the board of directors thereon nor by the stockholders, except acting individually in surrendering the old and taking the new certificates as stated. No resolutions, motion, vote or other action was presented to, considered or passed by the directors or stockholders to reduce the capital stock or to authorize such surrender or reissue, or to release the stockholders from further payments.

"6. No action was ever taken by the directors or stockholders ratifying such surrender and reissue unless the following is to be so considered : Just before January 28, 1892, this defendant and the vice-president assigned their respective certificates of .such reissued stock so indorsed ' fully paid up,' and thereupon the board of directors met upon proper call, and the object of the meeting was stated by the cashier, as follows : ' That the president, C. E. Putnam, and the vice-president, W. D. McFarlane, having sold their respective stock in this bank, and thereby becoming disqualified to hold office, it is necessary to fill the vacancies. Thereupon the board proceeded to do so by electing their successors, who entered at once upon their respective duties.

"7. On the 16th day of February, 1892, the bank commissioner issued to said bank, under his hand and seal, a certificate, a copy whereof is attached to the answer herein.

"State of Kansas. Office of Bank Commissioner. I, Chas. F. Johnson, bank commissioner of the state of Kansas, do hereby certify that the Bank of Richmond, county of Franklin, state of Kansas, has the sum of $10,000 capital paid in, and is authorized to transact a general banking business, as provided

by an act of the legislature of the state of Kansas entitled 'An act providing for the organization and regulation of banks, and prescribing penalty for violations of the provisions of this act.' In testimony whereof, I have hereunto subscribed my name and affixed my official se al.

"Done at Topeka, Kan., this 16th day of February, A. D. 1892.

CHAS. F. JOHNSON, *Bank Commissioner.*"

(This certificate was framed and hung up in the front part of the bank, where it was visible to the customers, and to everybody that came into the bank to do business, from the time it was received until the failure.)

"8. The assignment by the defendant of said reissued certificate No. 55, for two (2) shares of the capital stock of the bank referred to in finding No. 6 above, was made under the following circumstances: He became dissatisfied with the cashier, because of the latter's drunkenness, also because he believed some loans made by the cashier were not safe. At one time he found the cashier too drunk to sign a draft which he was endeavoring to draw, and he then determined to sell out, and so informed the cashier, and threatened to apply for a receiver unless his stock was purchased. Thereupon the cashier agreed to and did purchase said stock for $180. The certificate was assigned by writing on the back, signed by the defendant, and delivered to the cashier, who reattached it to the stub, in the book of blank certificates, where it yet remains. On February 4, 1892, however, Sowerby, the cashier, sold his stock (two shares) to J. A. Hutchison, then recently elected president, and certificate No. 99 was issued accordingly therefor. On the stub, on the blank book of certificates, is this statement: 'Issued in lieu of certificate No. 55.' The defendant promised the cashier when he made such assignment to say nothing about it. He made the assignment because he feared financial loss if he continued to hold to it, believing that the bank was unsafe because of the misconduct of the cashier.

" 9. The bank continued business until the 18th day of July, 1893, when, upon an examination made shortly before that by the bank commissioner, it was found to be insolvent, and that officer took charge of the bank, its property and effects, and notified the attorney general of his actions therein, who thereupon instituted proper proceedings in this court, and upon such proceedings the plaintiff was appointed receiver, to take charge of the bank and wind up its affairs and business as provided by law. The plaintiff thereupon qualified, and has ever since acted as such receiver. The defendant was a member of the board of directors and president of the bank, and so acted from its organization continuously until January 28, 1892.

"10. The bank was, on July 19, 1893, insolvent, and wholly unable to carry on its affairs, and had been so insolvent for some time, and is still insolvent. Its liabilities, exclusive of capital stock, are over $14,-000, and its available assets do not exceed $6,000, not including dues from stockholders, if any, and their individual liability. The receiver is without means to pay the debts of the bank, and will be unable to do so unless funds therefor may be recovered from the stockholders.

" 11. On the 25th day of November, 1893, the judge of this court, for good cause shown before him, authorized the receiver to demand, sue for and collect the unpaid subscriptions to the capital stock, to wit, the 80 per cent. remaining unpaid upon the stock originally issued.

" 12. The stationery, letter-heads, forms for notes, etc., used by the bank, printed soon after it opened, and used generally in its business until it closed, contained the statement printed in the margin, in the manner usual in such blanks, ' Capital stock, $50,000.' Its quarterly statements as published contained the item, ' Capital stock paid in, $10,000.' The bank advertisement in a local newspaper also contained the same statement, ' Capital stock paid, $10,000.'

" 13. More than 10 days before this suit was brought the plaintiff duly served upon the defendant the fol-

lowing written demand, which the defendant refused to comply with, viz.: ' To C. E. Putnam: Pursuant to an order of the Hon. A. W. Benson, judge of the district court of Franklin county, Kansas, made November 25, 1893, to demand and collect all unpaid subscriptions to the capital stock of the Bank of Richmond, you are hereby requested to pay, within five days herefrom, to me, at the Bank of Richmond, Richmond, Kan., the balance of such subscription due said bank from you, amounting to $800.—W. C. HUTCHISON, *Receiver of the Bank of Richmond.*'

" 14.  In response to an inquiry from the cashier as to the effect of the act of 1891, the bank commissioner, under date of June 24, 1891, wrote to him : ' You will not be required to pay up any more of your subscribed stock as long as you remain perfectly solvent.'   Again, in August, 1891, in response to another inquiry upon the same subject, the commissioner requested that the outstanding stock be called in, and new stock be issued in its place for the 20 per cent. so paid in on the old stock, as fully paid-up stock. Thereupon the cashier advised such surrender and reissue, as stated in the fourth finding."

And the court states its conclusions of law upon said facts, as follows :

## " CONCLUSIONS OF LAW.

" 1.  The capital stock of a corporation (paid in and to be paid in) is a trust fund for the benefit of the creditors.   The duty of the receiver under the law is to wind up the affairs and business of the bank, for the benefit of depositors, creditors, and stockholders. (Laws of 1891, p. 93, § 26.)   Besides this very comprehensive authority, he has the express direction of the court referred to in the findings of fact.   It is therefore his duty to collect this trust fund, if any remains to be paid in.  (To which the defendant excepts.)

" 2.  The attempt to withdraw 80 per cent. of the capital stock of this corporation, and the surrender thereof to the bank, was without authority, and is

fraudulent and void as to the creditors and this receiver who represents them. (To which the defendant excepts.)

"3. The defendant (while still a director and president of the bank) having transferred two shares of said stock (and only two shares), in the circumstances stated in the findings, is liable : First, for the amount due and unpaid on the eight remaining shares so issued and still held by him, to wit, $640 ; and second, having transferred the two shares as fully paid stock, and for the full value thereof, is liable also for the amount remaining due and unpaid thereon, to wit, $160 ; judgment should therefore be entered against him for $800. (To which the defendant excepts.)

"4. Proper orders will, however, be entered in the action of The State of Kansas, *ex rel.* the attorney general, v. The Bank of Richmond, wherein the receiver was appointed, so that only so much may be collected hereon as may be necessary to pay the debts and expenses and wind up the affairs of said bank, considering the amounts that may be realized on the unpaid shares of other stockholders who may be solvent, and within this jurisdiction, following the practice approved in *Clark v. Thomas*, 34 Ohio St. 46. (To which defendant excepts.)        A. W. BENSON, *Judge.*"

To which findings of fact and conclusions of law, and each of them, the defendant at the time excepted.

Judgment was rendered for Hutchison. Putnam brings the case here for review. The errors complained of are in the rulings and conclusions of the court.

*John W. Deford*, and *W. A. Deford*, for plaintiff in error.

*Smart & Muesse*, for defendant in error.

The opinion of the court was delivered by

DENNISON, J. : To decide intelligently the questions raised in this case it becomes necessary to consider

chapter 43 of the Session Laws of 1891, entitled "An act to provide for the organization and regulation of banks, and prescribing penalties for the violations of the provisions of this act." This act provides for the organization and regulation of all banks created after the taking effect thereof, and for the regulation of all banks which continue to do business for a longer time than six months after the passage and approval of the act. Sections 5 and 6 of said act provide that a bank thereafter created shall have 50 per cent. of its capital stock paid in before it applies to the bank commissioner for a certificate of authority to transact a banking business. It also provides that not less than 10 per cent. of the residue of the capital stock of such bank shall be paid in each month thereafter. Any individual, firm or corporation which was transacting a banking business at the time of the taking effect of said chapter 43 and which continues so to transact a banking business for a longer time than six months thereafter must transmit to the bank commissioner a verified statement of the resources and liabilities. of such individual, firm, or corporation, in accordance with the form prescribed in section 18 of said chapter 43, and shall also include in said statement the names and residences of the stockholders, the amount of stock subscribed, and the amount paid in by each. The bank commissioner shall thereupon examine into the condition and affairs of such bank, and if such bank has in all respects complied with the provisions of law applicable thereto he shall issue a certificate showing the amount of capital stock paid in, and that the same is authorized to transact a general banking business as provided by said act. The stockholders of the Bank of Richmond evidently proceeded upon

the theory that they were compelled, under the provision of chapter 43 aforesaid, to have at least 50 per cent. of their capital stock paid in within six months after its passage and to pay at least 10 per cent. of the residue each month thereafter.

We are not called upon in this case to decide the legal effect of the attempted reduction of the capital stock as between the different stockholders. We are only to determine its legal effect as between the stockholders and the creditors of the Bank of Richmond. On July 11, 1890, about eight months prior to the taking effect of the banking law of 1891, the Bank of Richmond was incorporated under the laws then in force. The capital stock was fixed at $50,000. This is shown by the charter, by the verified certificate recorded in the office of the register of deeds of Franklin county, Kansas, and by the records and advertisements of the Bank of Richmond. The verified statements of the condition of the bank, required by law to be published, and the certificate of the bank commissioner, each state the amount of capital stock paid in at $10,000. These are notice to a depositor or creditor, either present or prospective, that the Bank of Richmond has of unpaid subscriptions to its capital stock $40,000, which must be paid in upon such calls and terms as the directors may from time to time prescribe. C. E. Putnam subscribed $1,000 of the capital stock of said bank and paid in $200. He therefore owed $800. It will be conceded that this was a trust fund upon which the depositors and creditors of the Bank of Richmond could rely for their protection.

Two questions now present themselves: First, Did the statute of 1891 require the withdrawal of this trust fund? Second, Was the proceeding had on or

about September 15, 1891, sufficient to reduce the capital stock of the bank to $10,000, so as to debar creditors from the right to rely upon the $40,000 unpaid subscriptions?   We must answer the first question in the negative.   Nothing contained in the banking law of 1891 prohibited a banking corporation then in existence from continuing in business with only 20 per cent. of its capital stock paid in, provided it was solvent and complied with the legal requirements of the bank commissioner.   It was not required to have 50 per cent. of its stock paid in before applying for a certificate or to pay at least 10 per cent. of the residue each month thereafter.   This was required only of banks organized after the taking effect of said banking law.

We must also answer the second question in the negative.   Whatever the effect of the attempted reduction of stock may be as between the stockholders, it cannot be held to release them from the payment of their unpaid subscriptions to the capital stock of the bank, if needed for the payment of the creditors.   The bank was chartered with a capital stock of $50,000. This plaintiff in error testifies that the agreement between the stockholders was that the paid-up stock should be only $10,000, but they fixed the amount of the capital stock at $50,000 at the suggestion of Mr. Sowerby, who was afterwards cashier, because he thought it would give the bank a better name.   In this he was probably correct.   A corporation with $40,000 unpaid subscriptions to the capital stock thereof standing as a trust fund for the protection of creditors would undoubtedly have a better name, and more persons would become creditors of it (provided the subscribers were known to be responsible) than one with no unpaid subscriptions.   The certificate re-

quired by paragraph 1420 of the General Statutes of 1889 to be recorded in the office of the register of deeds states that the amount of its capital stock is $50,000 and that this plaintiff in error has subscribed $1,000 of it. All the advertisements of the bank and its stationery contained the statement, "Capital stock, $50,000," and all of its statements gave $10,000 as the amount of capital stock paid in. This is notice to the public of the responsibility of the Bank of Richmond.

What notice was given to the public as to the change by which the $40,000 trust fund was attempted to be abrogated and the subscribers released from the payment thereof? In what manner was the public notified that the capital stock was reduced to $10,000? No new or amended charter was obtained. No new or amended certificate was recorded in the office of the register of deeds of Franklin county, Kansas. No change was made in the statement of the amount of its capital stock printed upon the stationery used by the bank or in its advertisements. The only thing done, as shown by the record, was the correspondence, as set out in the findings of fact of the court, between the cashier and the bank commissioner, and the unofficial and unrecorded understanding between the stockholders under which they surrendered their old certificates and accepted the new ones, and the subsequent ratification of this change by the stockholders in voting the reduced number of shares of stock, and the directors' ratification of the sale of the two paid-up shares by this plaintiff in error. None of these acts was sufficient to impart notice to the public.

An incorporated company cannot be permitted to advertise to the public that it has a capital stock of $50,000, to state in its charter that its capital stock is $50,000, to certify under the oath of its officers that

its capital stock is $50,000, and record such verified
certificate in the office of the register of deeds in
the county in which the company does business, to
certify in the verified statement of the condition of the
bank that only $10,000 of its capital stock is paid in,
and then, without changing its advertisement, or its
charter, or its verified certificate, be permitted to say
to its creditors : ''The $40,000 trust fund which you
supposed we had behind this bank is not here.    We
have agreed among ourselves that we would relieve
each other of this liability by quietly bringing in our
stock and changing it for paid-up stock in the amount
of 20 per cent. of the original subscription.''    This
applies to creditors who became so after the attempted
reduction as well as to those who were creditors prior
thereto, for reasons fully apparent in this opinion.

Counsel for plaintiff in error contends that his client
is relieved from his liability to the creditors of the
Bank of Richmond by reason of having transferred
his stock to Sowerby.    If he had legally transferred
his original 10 shares of stock this contention would
be good.    This he did not do.    He first attempted to
reduce his original 10 shares with 20 per cent. paid
thereon to two shares fully paid up, and then to trans-
fer the two shares.    The attempted reduction was void,
and the issuance of the two fully-paid-up shares was a
nullity as between the stockholders and creditors.    Life
cannot be given to the two shares by transferring them
to another.    After the attempted reduction of capital
stock he must answer to the demands of creditors upon
his original 10 shares, and not upon the two fully-paid-
up shares.    He cannot relieve himself from his liabil-
ity to creditors upon the 10 shares by transferring the
two shares which are a nullity as to said creditors.

Finding no material error prejudicial to the righ

of the plaintiff in error, the judgment of the district
court is affirmed.

COLE, J., concurring.

JOHNSON, P. J., not sitting, having been of counsel.